## PEOPLE v COOPER

Docket No. 56970. Argued June 9, 1976 (Calendar No. 3).—Decided
    December 21, 1976.

Marx E. Cooper was convicted by a jury in Calhoun Circuit Court,
    Ronald M. Ryan, J., of attempted murder, bank robbery, and
    assault with intent to rob. The defendant had previously been
    acquitted by a jury in Federal district court on bank robbery
    charges arising out of the same act as the charges in circuit
    court, but did not assert a claim of double jeopardy before or at
    his state trial. The Court of Appeals, Bronson, P. J., and D. E.
    Holbrook, J., reversed as to attempted murder and affirmed as
    to the remaining convictions (V. J. Brennan, J., would have
    affirmed all the convictions) (Docket No. 17387). Defendant
    appeals. Held:

1. Waiver of a double jeopardy claim consists of two separate
    parts: (1) a specific knowledge of the constitutional right, and
    (2) an intentional decision to abandon the protection of the
    constitutional right; both of these elements must be present
    and if either is missing there can be no waiver and no finding
    of consent. Because the instant record contains no evidence of
    an intentional decision to abandon the protection of the consti-
    tutional right pertaining to double jeopardy, the defendant is
    not precluded from presenting his double jeopardy claim to the
    Supreme Court.

2. The trend in decisions of the United States Supreme Court
    leads to the conclusion that the permissibility of both Federal
    and state prosecutions for the same offense as a requirement of
    our Federal system's theory of dual sovereignty is open to
    reassessment. The United States Supreme Court has declared
    that the Fifth Amendment guarantee against double jeopardy
    is a fundamental right which is applicable to the states through
    the due process clause of the Fourteenth Amendment.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 209.
[2] 21 Am Jur 2d, Criminal Law §§ 473, 481.
[3] 21 Am Jur 2d, Criminal Law § 220.
[4, 6] 21 Am Jur 2d, Criminal Law §§ 166, 185.
[5] 21 Am Jur 2d, Criminal Law § 192.

3. The State Constitution prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different. Considerations pertinent to a determination whether a Federal prosecution satisfies the state's interest may include whether the maximum penalties involved are greatly disparate, whether one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive.

4. Where a person's behavior violates state and Federal laws which are framed to protect different social interests, prosecution by one sovereign will not satisfy the needs of the other sovereign. In such a case, given the Federal government's preemptive power, the inability of the state to vindicate its interest would be in derogation of the Federal system. Therefore, the double jeopardy guarantee is not extended to prohibit *all* successive prosecutions by two sovereigns for the same act.

5. The prosecutor has conceded here that the state's charges and the Federal charges arose out of the same criminal act. The Federal bank-robbery statute and the state statutes under which defendant was convicted seek to insure the safety of individuals and the protection of private property. Therefore, the defendant was twice put in jeopardy under the Michigan Constitution. The defendant's convictions are reversed.

Justice Coleman concurred in the result, but would emphasize that the "same transaction" concept is not applied in the dual sovereignty test, and that the Constitution prohibits a second prosecution for the "same offense" rather than for the "same criminal act". Barring some possible separate state interest in the second prosecution not demonstrated by these facts, dual sovereignty should not result in a second trial for the same criminal offense.

58 Mich App 284; 227 NW2d 319 (1975) reversed as to bank robbery and assault with intent to rob being armed.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—WAIVER.

Waiver of a claim of double jeopardy consists of two separate parts: (1) a specific knowledge of the constitutional right, and (2) an intentional decision to abandon the protection of the constitutional right; both of these elements must be present

and if either is missing there can be no waiver and no finding of consent (US Const, Am V; Const 1963, art 1, § 15).

2. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—WAIVER—SILENT REC-ORD.

A defendant is not precluded from presenting a claim of double jeopardy to the Supreme Court where the lower court record contains no evidence of an intentional decision to abandon the protection of that constitutional right (US Const, Am V; Const 1963, art 1, § 15).

3. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—STATES.

The Fifth Amendment guarantee against double jeopardy has been declared by the United States Supreme Court to be a fundamental right which is applicable to the states through the due process clause of the Fourteenth Amendment (US Const, Am V, Am XIV, § 1).

4. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION—DUAL JURISDICTIONS.

The State Constitution prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different (Const 1963, art 1, § 15).

5. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—SAME TRANSACTION—FEDERAL AND STATE PROSECUTIONS.

Successive prosecutions for bank robbery under Federal law, and bank robbery and assault with intent to rob being armed under state law, arising out of the same criminal act violates the guarantee against double jeopardy in the Michigan Constitution because the Federal and state statutes seek to protect the same social interest: the safety of individuals and the protection of private property (Const 1963, art 1, § 15; 18 USC 2113[a]; MCL 750.89, 750.531; MSA 28.284, 28.799).

CONCURRING OPINION

COLEMAN, J.

See headnote 5.

6. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—DUAL SOVEREIGNTY.

*The state constitutional prohibition against a second prosecution for the same offense applies as between state and Federal jurisdictions unless it appears from the record that the interests of the state and the jurisdiction which initially prosecuted*

*are substantially different; however, the "same transaction" concept does not apply in this dual sovereignty test (Const 1963, art 1, § 15).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John J. Rae,* Prosecuting Attorney, for the people.

Marx E. Cooper *in propria persona.*

Amici Curiae:

American Civil Liberties Union of Michigan, by *Sheridan V. Holzman,* General Counsel.

Michigan Committee for Human Rights, by *Gary A. Colbert.*

LINDEMER, J. On December 18, 1970, defendant-appellant attempted to rob a bank with the use of bombs in Battle Creek, Michigan. Heroic action by bank and police officials prevented what might otherwise have been a tragic loss of life.

We granted leave in this case to consider whether defendant's trial in state court following his acquittal in Federal court on charges for the same criminal act violated his right to be free from double jeopardy under either Const 1963, art 1, § 15 or US Const, Am V.

On February 10, 1971, defendant was arraigned in Federal court on alternative counts of violating 18 USC 2113(a), the Federal bank robbery statute. A trial commenced and on June 5, 1971, the jury returned a verdict of not guilty on both counts.

Subsequently, on June 22, 1971, defendant was arraigned in a state court on three charges: (1) attempted murder, MCLA 750.91; MSA 28.286; (2) bank robbery, MCLA 750.531; MSA 28.799; and (3) assault with intent to rob being armed, MCLA

750.89; MSA 28.284. The case went to trial and the jury found defendant guilty of all three offenses. He received a sentence of from 5 to 25 years in prison on each count, the terms to run concurrently.

The Court of Appeals dismissed the attempted murder count but, citing *Bartkus v Illinois,* 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959), and *In re Illova,* 351 Mich 204; 88 NW2d 589 (1958), concluded that defendant's double jeopardy claim failed under both the United States and Michigan Constitutions.

I

We turn first to the preliminary question of whether defendant is precluded from raising the defense of double jeopardy on appeal when he failed to raise it before or at trial. There is some confusion in the courts below as to the propriety of presuming such a waiver from a silent record. Compare *People v McPherson,* 21 Mich App 385, 391; 175 NW2d 828 (1970) (waiver of double jeopardy not presumed from a silent record) with *People v Cooper,* 58 Mich App 284, 290; 227 NW2d 319 (1975) (double jeopardy must be raised before or during trial or it is waived). The decisions of this Court, too, are not without inconsistency. Compare *People v Powers,* 272 Mich 303; 261 NW 543 (1935), with *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972).

In *Powers, supra,* the Court quoted with approval the language in LRA 1917A, 1233 which provided that double jeopardy claims are waived if not raised before or at trial. *Powers* at 307. The defendant in *People v Powers* was charged with receiving stolen property and larceny. He was convicted on the larceny count. In a subsequent

trial for receiving stolen property, defendant did not raise a double jeopardy claim and he was convicted. It was the established law at that time that "where a defendant is charged with distinct offenses in separate counts, a conviction on one of the counts works an acquittal of the other". 272 Mich at 306. Nevertheless, the defendant was held to have waived his claim because he did not raise his conviction of larceny prior to his subsequent conviction of receiving stolen property.

Since that time, the constitutional law regarding double jeopardy has changed. Not the least of those changes has been the application of the Fifth Amendment guarantee against double jeopardy to the states through the due process clause of the Fourteenth Amendment. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

In *Grimmett, supra,* wherein the prosecutor contended that defendant waived his double jeopardy claim because he did not raise the issue and requested and consented to a new jury, this Court reviewed the United States Supreme Court's post-*Powers* analyses of the waiver concept. We concluded:

"Thus, waiver consists of two separate parts: (1) a specific knowledge of the constitutional right; and (2) an intentional decision to abandon the protection of the constitutional right. Both of these elements must be present and if either is missing there can be no waiver and no finding of consent." 388 Mich 598.

In light of both *Benton* and *Grimmett,* we must conclude that the holding in *Powers* does not extend beyond its particular factual setting. Because the instant record contains no evidence of "an intentional decision to abandon the protection of the constitutional right" pertaining to double

jeopardy, the defendant is not precluded from presenting his double jeopardy claim to this Court.

## II

We begin our analysis of defendant's claim that he was twice put in jeopardy with *Bartkus v Illinois,* 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959), and its companion case of *Abbate v United States,* 359 US 187; 79 S Ct 666; 3 L Ed 2d 729 (1959). In a five-to-four decision, *Bartkus* held that an acquittal on a prior Federal charge of bank robbery was not a bar on double jeopardy grounds to a successive state prosecution for the same criminal act. *Abbate* held that a conviction on a state charge of conspiracy was not a bar on double jeopardy grounds to a successive Federal prosecution based on the same criminal act.

Justice Frankfurter, writing for the majority, based his decision upon two principles: (1) that the Fifth Amendment Double Jeopardy Clause is not binding on the states; and (2) that our concept of dual sovereignty in a Federal system compels maintenance of a strong state, as well as Federal, system of justice. He discussed a long line of American cases to demonstrate that repeated prosecutions are an ingrained part of American criminal procedure. In addition, limitation of dual sovereignty "would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines". *Bartkus* at 137. *Bartkus* includes a sharp dissent. In his dissent Justice Black analyzed the situation not from the viewpoint of maintaining a state's prerogatives, but rather from the perspective of defendant's rights. He wrote that the notion that successive Federal and state trials for the same act are somehow less offensive than

repeated prosecutions by one sovereign was "too subtle for me to grasp". *Bartkus* at 155.

The trend in United States Supreme Court decisions leads us to conclude that the permissibility of Federal-state prosecutions as a requirement of our Federal system is open to reassessment. Indeed, the reasoning supporting *Bartkus* has been seriously undermined. In *Benton v Maryland,* the Court declared the Fifth Amendment guarantee against double jeopardy to be a fundamental right which was applicable to the states through the due process clause of the Fourteenth Amendment. Subsequent United States Supreme Court decisions have also cut away at *Bartkus'* remaining rationale, the dual sovereignty theory.

In *Elkins v United States,* 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960), the Court denied that evidence obtained by state authorities during a search, which if conducted by Federal officers would have violated the Fourth Amendment, could be admitted in a Federal prosecution because of the dual sovereignty doctrine. The court, viewing the issue from the defendant's perspective, observed that "[t]o the victim it matters not whether his constitutional right has been invaded by a federal agent or by a state officer". *Elkins* at 215.

In *Murphy v Waterfront Commission of New York Harbor,* 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964), wherein the issue was whether the Fifth Amendment privilege against self-incrimination protects state and Federal witnesses against incrimination under both state and Federal law, the Court held that a state witness need not testify if his answer might incriminate him unless his immunity covered Federal prosecutions as well. The Court again rejected the dual sovereignty argument and allowed a defendant in one sover-

eignty to assert rights based on the actions of another sovereignty's officials.

The people argue that language in *In re Illova,* 351 Mich 204, 209; 88 NW2d 589 (1958), supports *Bartkus:*

"The substance of the matter is this: When a defendant has violated both State and Federal laws he is liable to each sovereign and subject to prosecution by each. It is not his privilege to choose which shall first inflict punishment. If any comity between sovereigns is violated, the offended sovereign may complain, not the defendant."

The issue in *Illova* was not double jeopardy, but jurisdiction. The *Illova* defendant, while in state custody, was turned over to Federal authorities for a plea to a Federal offense and was sentenced to five years. He was then returned to state authorities who tried defendant, found him guilty, and sentenced him to a five-to-ten-year sentence which was to run concurrently with the Federal sentence. It is not reported whether the Federal and state offenses grew out of the same criminal act. After completing his Federal sentence he was returned to state prison, thus presenting the issue of whether the state relinquished all rights and claims of imprisoning the defendant by transferring its jurisdiction over him to the Federal authorities to serve a five-year sentence when the state had ordered its five-to-ten-year sentence to begin immediately. The Court answered in the negative.

The suggestion in *Illova* that "when a defendant has violated both State and Federal laws he is liable to each sovereign" was analyzed in *In re Carey,* 372 Mich 378, 381; 126 NW2d 727 (1964).

Finding "little justification for this dual approach in the sentencing law" and observing that "the sooner we eliminate it the better", this Court in *Carey* held that absent statutory authority a defendant under a Federal sentence cannot subsequently be given a state sentence which is ordered not to commence until the expiration of the Federal sentence. *Illova* was expressly overruled to the extent it was inconsistent with the preceding holding.

Rather than supporting *Bartkus,* the case history of *Illova* suggests an increased scrutiny of dual sovereignty claims on the part of this Court. This Court's increased scrutiny parallels the United States Supreme Court's skepticism, as manifested in *Elkins* and *Murphy,* of the dual sovereignty doctrine.

The dual sovereignty notion is predicated on the belief that state criminal justice systems should be strong. Additionally, there is the fear that Federal legislation which covers a criminal act may involve interests unlike the interests which state legislation covering the same criminal act may seek to promote. We agree that where an individual's behavior violated state and Federal laws which are framed to protect different social interests, prosecution by one sovereign will not satisfy the needs of the other sovereign. In such a case, given the Federal government's preemptive power, the inability of the state to vindicate its interests would truly be an "untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines. It would be in derogation of our federal system". *Bartkus, supra,* at 137 (Frankfurter, J.). Therefore, we cannot accept defendant's proffered alternative to the dual sovereignty doctrine which would pro-

hibit *all* successive prosecutions by two sovereigns for the same act.

However, the interest of the Federal and state governments in prosecuting a criminal act frequently coincide. When state and Federal interests do coincide, prosecution by one sovereign will satisfy the need of the other. We note that persons convicted in Federal court only very rarely are prosecuted in state courts for offenses arising out of the same criminal act.

Moreover, we do not perceive an inability or unwillingness to cooperate among state and Federal criminal justice officials. Law enforcement agencies are not separate and independent in this age of "cooperative federalism", as the United States Supreme Court has observed, "where the Federal and State Governments are waging a united front against many types of criminal activity". *Murphy, supra,* at 56. The instant record shows that cooperation between state and Federal authorities is not uncommon.

The defendant's interests in not being forced twice to run the gauntlet are substantial. They include his desire to avoid (1) continued embarrassment, expense and ordeal; (2) being compelled to live in a continuing state of anxiety and insecurity; and (3) the possibility that even though innocent he may be found guilty through repeated prosecutions. *United States v Wilson,* 420 US 332, 342; 95 S Ct 1013; 43 L Ed 2d 232 (1975); *Green v United States,* 355 US 184, 187–188; 78 S Ct 221; 2 L Ed 2d 199 (1957).

We feel that the interests of the state and the defendant are best accommodated by the approach of the Pennsylvania Supreme Court in *Commonwealth v Mills,* 447 Pa 163; 286 A2d 638 (1971). We perceive that approach as requiring, and we so

hold, that Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different. Analysis on a case-by-case basis cannot be avoided.

Although the United States Supreme Court's treatment of the rational underpinnings of *Bartkus* leads us to question seriously its current vitality, it has not been expressly overruled. Therefore, we have preferred to rest the decision on our state constitution. In doing so, we have, appropriately, "assign[ed] proper weight to opposing interests and give[n] some consideration to public policy". *People v Beavers,* 393 Mich 554, 581; 227 NW2d 511 (1975) (COLEMAN, J., dissenting).

A prosecutor would be entitled to direct the attention of the court to factors which are pertinent to a determination of whether a Federal prosecution satisfies the state's interest. Such factors, for prosecutions arising out of the same criminal act, may include whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive. While we would prefer that our interpretation produce clear distinctions, we are comforted by our belief in the correctness of this approach, the judiciary's ability to apply this test, and the infrequency of successive Federal and state prosecutions.

The instant defendant was acquitted in Federal court under the Federal bank robbery statute. 18

USC 2113(a). He comes before us convicted in state court of bank robbery, MCLA 750.531; MSA 28.799, and assault with intent to rob being armed, MCLA 750.89; MSA 28.284. His conviction for attempted murder was reversed by the Court of Appeals and that charge is not before us.

The prosecutor has conceded that the state's charges and the Federal charges arose out of the same criminal act. The Federal statute which defendant was charged with violating reads as follows:

"§ 2113. Bank robbery and incidental crimes

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." 18 USC 2113(a).

We conclude that the interests sought to be protected by the Federal statute are not substantially different than those sought to be protected by the two state statutes of which defendant stands convicted. The laws of both jurisdictions seek to insure the safety of individuals and the protection of private property.

Defendant's convictions are reversed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, FITZGER-
ALD, and RYAN, JJ., concurred with LINDEMER, J.

COLEMAN, J. *(concurring).* I concur in the result
of the majority opinion, agreeing in part and
disagreeing in part.

In agreeing with the result, I would emphasize
the fact that the Michigan "same transaction"
concept is not applied in this dual sovereignty test.
Had the reversal of the conviction for attempted
murder been cross-appealed to this Court, we could
have heard it. There was no such offense charged
in the Federal court.

In disagreeing, I would narrow the rule accepted
from *Commonwealth v Mills,* 447 Pa 163; 286 A2d
638 (1971), which "prohibits a second prosecution
for an offense arising out of the same criminal act"
to one which "prohibits a second prosecution for
the same offense". The latter wording is consistent
with Const 1963, art 1, § 15, which provides:

"No person shall be subject for the same offense to be
twice put in jeopardy."

Reluctantly, I agree with my colleagues that
defendant's convictions for bank robbery and as-
sault with intent to rob being armed should be
reversed.

On December 18, 1970, defendant entered the
Michigan National Bank Building in Battle Creek
carrying an intricate explosive device employing
live dynamite. He threatened to destroy the bank
unless he was given $375,000 in cashier checks.
Defendant had another explosive device in his
motel room which would have been detonated
from the bank as a diversion during his planned
escape. If exploded, both devices could have killed
many people. Defendant did attempt to detonate

one device when the police arrived at the bank. As Justice Lindemer notes, "[h]eroic action by bank and police officials prevented what might otherwise have been a tragic loss of life".

Defendant was first tried in Federal court for violating this statute:

"Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." 18 USC 2113(a).

Defendant was subsequently arraigned and convicted in the state court on three charges, two of which concern the same crimes as those described by the Federal statute. These were MCLA 750.531; MSA 28.799:

"Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure, or wound, or attempt, or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or

other depository of money, bonds, or other valuables, or
shall attempt to break, burn, blow up or otherwise
injure or destroy any safe, vault or other depository of
money, bonds or other valuables in any building or
place, shall, whether he succeeds or fails in the perpe-
tration of such larceny or felony, be guilty of a felony,
punishable by imprisonment in the state prison for life
or any term of years."

and MCLA 750.89; MSA 28.284:

"Any person, being armed with a dangerous weapon,
or any article used or fashioned in a manner to lead a
person so assaulted reasonably to believe it to be a
dangerous weapon, who shall assault another with in-
tent to rob and steal shall be guilty of a felony, punish-
able by imprisonment in the state prison for life, or for
any term of years."

In both trials defendant pled insanity. In the
Federal court he was found not guilty. In the state
court he was found guilty on all three counts.[1]

I agree with Justice LINDEMER that "[w]hen
state and Federal interests do coincide, prosecution
by one sovereign will satisfy the need of the oth-
er". I agree that "the interests sought to be pro-
tected by the Federal statute are not substantially
different than those sought to be protected by the
two state statutes" quoted above. The state
charges constituted an attempt to retry defendant
on substantially the same crimes for which the
Federal government prosecuted him, excepting
that of attempted murder.

The Court of Appeals reversed the attempted
murder charge but called it a "close question".
The prosecution of defendant for attempted mur-
der may well have involved interests substantially

[1] Defendant has been free on bond since August 9, 1972. He claims
to be employed by the state as a social worker.

different from those addressed by the Federal statute. However, the prosecutor did not appeal the decision as to attempted murder, so we are unable to review it.

Defendant has never denied committing the acts. He had the ability and intent not only to kill himself but also many others if he failed in his mission to obtain the money. If it were not for the bank manager's reactions and the police officers' courage, defendant may well have accomplished the deed.

However, as a principle of law, I believe that dual sovereignty should not result in a second trial for the same criminal offense, barring some possible separate state interest not demonstrated by these facts, and I therefore concur in the reversal.