PEOPLE v TYLER

Docket No. 43916. Submitted May 6, 1980, at Lansing.—Decided
October 22, 1980. Leave to appeal applied for.

Clarence Tyler was charged with an open count of murder in the
shooting death of Delano Harris. Because Harris had been
scheduled as a witness in a Federal narcotics case, Federal
authorities had charged Tyler with conspiracy to obstruct
justice, aiding and abetting to influence a witness and aiding
and abetting interstate travel in aid of racketeering. Following
trial in a Federal court, Tyler was acquitted on all three
counts. Since the Federal prosecution had taken place prior to
the filing of the Michigan murder charge, Tyler moved to
dismiss the state charge as being double jeopardy. The Genesee
Circuit Court, Earl E. Borradaile, J., denied the motion to
dismiss, and the state murder charge proceeded to trial. During
the trial, brief references were made to the prior Federal
proceedings during the impeachment of witnesses. Defense
counsel sought to have the jury informed of defendant's acquit-
tal on the Federal charges, arguing that defendant would be
prejudiced if such information was not made available to the
jury. The trial court refused to permit any reference to the
acquittal on the Federal charges, determining that such infor-
mation might mislead and confuse the jury; however, the trial
court did instruct the jury that the outcome of the Federal
prosecution was of no concern to it. Defendant was convicted of
second-degree murder. Defendant appeals. *Held:*

1. The doctrine of collateral estoppel does not bar the state
prosecution for murder, even though the state charge arose out
of the same incident that resulted in the Federal charges, since
the doctrine of collateral estoppel bars only a relitigation of an
issue by the same parties. Since the State of Michigan was not

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 21 Am Jur 2d, Criminal Law §§ 191, 192.

[4] 21 Am Jur 2d, Criminal Law § 192.

[5] 29 Am Jur 2d, Evidence § 332.

Admissibility of evidence as to other offense as affected by defen-
dant's acquittal of that offense. 86 ALR2d 1132.

a party to the prior Federal prosecution, the doctrine of collateral estoppel has no application under these circumstances.

2. While the doctrine of dual sovereignty as interpreted by Federal courts permits successive prosecutions by state and Federal governments for the same criminal conduct without violation of the double jeopardy clause of the United States Constitution, the State of Michigan, on the basis of the Michigan constitutional prohibition against double jeopardy, has held that successive prosecutions by two jurisdictions are permissible only when it appears that the interests of this state are substantially different from those of the other jurisdiction. The question of whether there exists a substantial difference between the interests of this state and the other jurisdiction requires consideration of whether the maximum penalty under the Michigan statute under which charges are being brought and the maximum penalty under the statute of the other jurisdiction under which that jurisdiction's charges were brought are greatly disparate, whether the other jurisdiction cannot be entrusted to vindicate this state's interests, and whether there are substantive rather than merely jurisdictional differences between this state's statute and the statute of the other jurisdiction.

3. In the present case there exist the necessary substantial differences warranting the subsequent Michigan prosecution for murder. The Federal charges carry maximum sentences of five years of imprisonment plus fines of $5,000 and $10,000 compared to the maximum penalty of life imprisonment on the Michigan murder charge. Since there was no applicable Federal statute permitting a Federal charge for murder, the Federal government was incapable of vindicating Michigan's interest in having defendant tried for murder. Since the elements of proof for the Federal charges differ from the elements of proof for this state's murder charge, there existed substantive rather than merely jurisdictional differences between the Michigan and Federal statutes.

4. The refusal of the trial court to permit evidence of or reference to defendant's prior acquittal on the Federal charges was proper. The trial court's action cannot be said to constitute an abuse of discretion.

Affirmed.

1. CRIMINAL LAW — STATE AND FEDERAL PROSECUTIONS — COLLATERAL ESTOPPEL.

The doctrine of collateral estoppel does not bar prosecution of a person on state criminal charges arising out of the same

incident which resulted in Federal charges that ended in acquittal, since that doctrine bars only a relitigation of an issue by the parties in the first prosecution and the state is not a party in the Federal prosecution.

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — SAME TRANSACTION — FEDERAL AND STATE PROSECUTIONS — FEDERAL LAW.

The doctrine of dual sovereignty, as interpreted by Federal courts, permits successive prosecutions by state and Federal governments for the same criminal conduct, there being no double jeopardy bar under such circumstances within the meaning of the United States Constitution (US Const, Am V).

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — SAME TRANSACTION — FEDERAL AND STATE PROSECUTIONS — FACTORS PERMITTING SUCCESSIVE PROSECUTIONS.

The doctrine of dual sovereignty has, as a matter of Michigan constitutional law, been qualified so as to bar a prosecution on charges in this state following a prosecution in another jurisdiction on charges arising out of the same criminal act unless it appears that the interests of this state are substantially different from those of the other jurisdiction; the question of whether there exists a substantial difference between the interests of this state and the other jurisdiction involves consideration of whether the maximum penalties under the Michigan statute and the statute of the other jurisdiction are greatly disparate, whether the other jurisdiction cannot be entrusted to vindicate this state's interests, and whether there are substantive rather than merely jurisdictional differences between this state's statute and the statute of the other jurisdiction (Const 1963, art 1, § 15).

4. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — SAME TRANSACTION — FEDERAL AND STATE PROSECUTIONS.

A Michigan prosecution for murder is not barred on double jeopardy grounds following an acquittal on Federal charges of conspiracy to injure a witness or obstruct justice, aiding and abetting to influence a witness, and aiding and abetting interstate travel in the aid of racketeering, the Federal charges arising out of the same criminal act as the Michigan murder charges, since: (1) each of the three Federal charges have maximum sentences of five years imprisonment compared to the life imprisonment sentence on the Michigan murder charge; (2) the Federal government, lacking a murder statute upon which to bring charges under the circumstances, is unable to vindicate Michigan's interests in trying the accused for

murder; and (3) there are substantive rather than merely jurisdictional differences between the Michigan and Federal statutes involved.

5. CRIMINAL LAW — EVIDENCE — ACQUITTAL OF DEFENDANT IN RE-
    LATED PROSECUTION — DISCRETION — RULES OF EVIDENCE.

A refusal by a trial court to permit evidence of a defendant's prior acquittal in Federal court does not constitute an abuse of discretion requiring reversal, even where there have been references at trial to the prior Federal trial, where the trial court determines that such evidence of the prior acquittal might mislead the jury and the jury is instructed that the outcome of the Federal trial is of no concern to them (MRE 403).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Krellwitz & Cavanaugh,* for defendant.

Before: CYNAR, P.J., and M. J. KELLY and T. GILLESPIE,* JJ.

T. GILLESPIE, J. Four witnesses testified at the October, 1978, murder trial of Clarence Bernard Tyler concerning an incident on April 2, 1977, where these witnesses had heard gunshots and thereafter saw two black men running at the intersection of Ridgeway and Clyde Streets in the City of Flint. Shortly thereafter, the body of Delano Harris, a heroin dealer and gambler, was found in his car on Ridgeway Street. He had been bound with rope and shot to death.

One witness for the prosecution was Loretta Ruth Banks. Ms. Banks lived with J. T. Tyler, a cousin of the defendant. Her fingerprints were found on Harris's car.

* Circuit judge, sitting on the Court of Appeals by assignment.

Ms. Banks testified that in February or March, 1977, she had heard the defendant talking to Marzellus Wilson about a "snitch". On the date that Harris was shot, Ms. Banks said that she had seen the defendant, Harris, and J. T. Tyler, her boyfriend, in the basement of the home of J. T. Tyler. Harris was bound with a rope. The defendant had a gun at Harris's head, and Harris was pleading "Don't hurt me" and that he had not snitched. Shortly thereafter, Ms. Banks saw the defendant drive away with Harris in Harris's car, followed by J. T. Tyler in her car. Later that evening, the defendant told her he had shot Harris. One Jimmie Lee Martin, another witness, testified to a similar admission.

Scientific evidence identified rope found at the defendant's home as identical with the rope used to bind Harris. Nearly a year later the defendant was arrested wearing a blood-stained jacket. The blood stains matched the blood type of Harris, however, the type was one not uncommon among the black population.

An agent of the United States Drug Enforcement Administration testified that Harris had been a witness before a Federal grand jury in Baltimore, Maryland, on March 2, 1977, and was scheduled as a witness in a pending Federal narcotics case.

After the death of Delano Harris, the defendant was charged in a three-count indictment in Federal District Court in Baltimore, Maryland, with:

(1) conspiracy to influence or injure a witness or to obstruct justice (18 USC 371, 1503),

(2) aiding and abetting to influence a witness (18 USC 2, 1503), and

(3) aiding and abetting interstate travel in aid of racketeering (18 USC 2, 1952).

On June 1, 1978, the defendant was acquitted on all three counts. On July 7, 1978, the prosecutor in Genesee County charged defendant, by information, with an open charge of murder, MCL 750.316; MSA 28.548, and MCL 750.317; MSA 28.549.

Prior to trial, defendant moved to dismiss the state charges as violative of double jeopardy. Const 1963, art 1, § 15. This motion was denied by the trial court. Defendant was tried and convicted of second-degree murder in Genesee County and on December 5, 1978, sentenced to a prison term of 40 to 60 years from which he appeals.

Defendant argues that the doctrine of collateral estoppel applies to bar the state prosecution for murder after the conclusion of the Federal litigation. In *Ashe v Swenson,* 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the United States Supreme Court stated:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit." (Emphasis added.)

Furthermore, in *United States v Hayes,* 589 F2d 811, 819 (CA 5, 1979), the Fifth Circuit Court of Appeals stated:

"Collateral estoppel does not apply to successive prosecutions by the state and federal governments because the party that the defendant seeks to estop in the second prosecution was not a party to the first trial. *Turley v Wyrick,* 554 F2d 840, 842 (8th Cir 1977), *cert denied,* 434 US 1033, 98 S Ct 765, 54 L Ed 2d 780 (1978); *United States v Smith,* 446 F2d 200, 202 (4th Cir 1971); *United States v Hutul,* 416 F2d 607, 626 (7th Cir

1969), *cert denied,* 396 US 1012, 90 S Ct 573, 24 L Ed 2d 504 (1970)."

See also *United States v Malatesta,* 583 F2d 748 (CA 5, 1978), and *United States v Braunstein,* 474 F Supp 1 (D NJ, 1979).

The State of Michigan was not a party to the Federal litigation. Therefore, the doctrine of collateral estoppel does not apply in the present case to bar the litigation of factual issues previously litigated in the Federal trial. In addition, defendant's failure to provide the transcript of the Federal trial to the Genesee County Circuit Court with his motion to dismiss the state charges or to this Court makes review of the factual issues impossible. *United States v Smith,* 446 F2d 200, 202 (CA 4, 1971). See also *Turley v Wyrick,* 554 F2d 840, 842 fn 2 (CA 8, 1977).

In a related argument, defendant maintains that the doctrine of dual sovereignty is not applicable to the present case and, thus, his state murder prosecution and the Federal acquittal of obstruction of justice, arising out of the same criminal act, was a violation of double jeopardy.

Under the dual sovereignty doctrine as set forth in *Abbate v United States,* 359 US 187; 79 S Ct 666; 3 L Ed 2d 729 (1959), and *Bartkus v Illinois,* 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959), successive prosecutions by the state and Federal governments for the same act do not constitute double jeopardy. See also *People v Morillo,* 90 Mich App 655; 282 NW2d 434 (1979). In *United States v Hayes, supra,* the United States Court of Appeals reemphasizes that there is no United States constitutional bar to successive state and Federal prosecutions for the same criminal conduct.

However, in *People v Cooper,* 398 Mich 450, 460-461; 247 NW2d 866 (1976), the Michigan Supreme Court, recognizing the possibility of coincident state and Federal interests in prosecuting a defendant for offenses arising out of the same criminal act, qualified the dual sovereignty doctrine as follows:

"We feel that the interests of the state and the defendant are best accommodated by the approach of the Pennsylvania Supreme Court in *Commonwealth v Mills,* 447 Pa 163; 286 A2d 638 (1971). We perceive that approach as requiring, and we so hold, that Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are *substantially different.* Analysis on a case-by-case basis cannot be avoided." (Emphasis added.)

In the recent case of *People v Gay,* 407 Mich 681, 694-695; 289 NW2d 651 (1980), the Michigan Supreme Court further explained the approach adopted in *Cooper, supra:*

"*Cooper* represents a strong and uncompromising statement by this Court that a defendant's right not to be twice tried in Federal and state court for the same criminal act will be jealously guarded except in extreme cases where Federal laws are framed to protect substantially different social interests. 398 Mich 459. *Cooper* makes clear that as a firm rule dual prosecution ordinarily will not be tolerated in Michigan. It is only in the rare instance where the social interests of the state are not addressed in substance by the Federal statute that a second prosecution will be allowed."

The *Cooper* Court suggested a three-factor approach for determining whether the interests of

the state and the Federal governments are "substantially different":

"A prosecutor would be entitled to direct the attention of the court to factors which are pertinent to a determination of whether a Federal prosecution satisfies the state's interest. Such factors, for prosecutions arising out of the same criminal act, may include whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive. While we would prefer that our interpretation produce clear distinctions, we are comforted by our belief in the correctness of this approach, the judiciary's ability to apply this test, and the infrequency of successive Federal and state prosecutions." *Cooper, supra,* 461.

Regarding the maximum penalties of the statutes involved, the state statutes for first-degree and second-degree murder carry a maximum penalty of life imprisonment. MCL 750.316; MSA 28.548, MCL 750.317; MSA 28.549. The Federal offense of aiding and abetting in the obstruction of justice, 18 USC 2, 1503, carries a maximum sentence of five years imprisonment, or $5,000 fine, or both.[1] This question was clearly settled by the Michigan Supreme Court in *People v Formicola,* 407 Mich 293; 284 NW2d 334 (1979), in which it held that such a disparity in penalties is substantial.

Defendant argues that the penalties under the two other Federal offenses with which he was charged should also be considered in comparing

[1] Under Federal law, a person who aids and abets another in the commission of a crime is subject to the same penalty as is the principal offender.

the penalties between the state and Federal statutes. Defendant reasons that only then could the Federal and state interests in prosecuting defendant be properly compared. Aiding and abetting interstate travel in aid of racketeering, 18 USC 2, 1952, and conspiracy to obstruct justice, 18 USC 371, 1503, each carry a maximum penalty of five years imprisonment, or a $10,000 fine, or both.

Consideration of the conspiracy charge in connection with this dual sovereignty issue is inappropriate since conspiracy involves elements of proof different from the substantive offense. See *United States v Friedman,* 506 F2d 511 (CA 8, 1974), *People v Tinskey,* 394 Mich 108; 228 NW2d 782 (1975). Thus conspiracy to obstruct justice, even where the obstruction of justice involves the killing of a witness, is not based on the same criminal act as murder. In any event, we find the difference in penalties between one charge carrying a maximum of life imprisonment and three charges each carrying a maximum of five years imprisonment plus a fine to be greatly disparate. Compare *People v Cooper, supra.*

The second test set forth in *Cooper* is whether one jurisdiction can be entrusted to vindicate fully another jurisdiction's interest in securing a conviction. In this test the Supreme Court certainly meant the word "entrusted" to cover the ability of the prosecuting jurisdiction, for any number of reasons, to render justice which approximates that which the nonprosecuting jurisdiction could render.

In this case there was a willingness on the part of the Federal government, but there was not a Federal statute which could be used to vindicate the State of Michigan's interest to try the defendant for murder.

Murder is a crime tried in state courts, *Hackathorn v Decker,* 243 F Supp 22 (ND Tex, 1965), *aff'd* 369 F2d 150 (CA 5, 1966), *cert den* 389 US 940; 88 S Ct 301; 19 L Ed 2d 294 (1967), and is triable in Federal courts only where a Federal statute reserves such jurisdiction, as for example: 18 USC 1114 (murder of a Federal officer); 18 USC 1116 (murder of a foreign official, an official guest or an internationally protected person); 18 USC 1652 (murder on the high seas); or 18 USC 1111(a) (murder on a Federal reservation).

In this case, the Federal government did not have the statutory authority to prosecute for murder, and thus could not be "entrusted" to vindicate the interests of the State of Michigan, and, therefore, tried the defendant for obstruction of justice under 18 USC 1503.[2]

As to the third factor, it appears that the Federal obstruction of justice statute and the state murder statutes contain substantive rather than

---

[2] The following is the text of the Federal statute prohibiting the obstruction of justice:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 USC 1503.

merely jurisdictional differences. In the first place, they contain substantially different elements. They differ as to the type of conduct prohibited, as to the interests to be protected, and as to the proofs required to establish the offenses. The Federal statute is designed to prevent a wide range of acts intended to impede the Federal judicial system as well as to protect a limited number of people— those participating in the judicial system. The state statutes, on the other hand, are designed to protect against a specific kind of act and are intended to protect all citizens. The Federal statute requires the additional showing of intent to influence a judicial proceeding. See *People v Formicola, supra,* for an analysis involving the same Federal statute.

Application of the *Cooper* three-factor approach to the present case leaves room for only one conclusion, and that is: that the interests sought to be protected by the Federal and state statutes are substantially different and, thus, that the trial court did not err in permitting the state trial to proceed.

Defendant's other assignment of error is in regard to the trial court's decision granting the prosecutor's request to exclude evidence of defendant's acquittal in the Federal trial. During the trial, brief references to the proceedings held in Baltimore were made several times, including a few times by defense counsel, during impeachment of witnesses by their prior inconsistent statements made during the Baltimore trial. Defense counsel argued that, since the Federal trial was brought to the jury's attention, defendant would be prejudiced if the jury were not informed of the outcome of that trial. The trial court determined that reference to defendant's acquittal at the prior trial

might mislead and confuse the jury; however, the trial court did instruct the jury that whatever may have happened at the Baltimore trial was of no concern to them in this case.

We conclude that the trial court did not abuse its discretion in excluding evidence of defendant's prior acquittal in Federal court. MRE 403, *United States v Watts,* 505 F2d 951 (CA 5, 1974), *vacated on other grounds,* 422 US 1032; 95 S Ct 2648; 45 L Ed 2d 688 (1975). See also *People v Bolden,* 98 Mich App 452; 296 NW2d 613 (1980), for a discussion in a different context of the use of evidence of a defendant's prior acquittal.

Affirmed.