PEOPLE v MEZY

Docket No. 143092. Submitted August 2, 1994, at Lansing. Decided
    February 6, 1995, at 9:30 A.M. Leave to appeal sought.

Basil Mezy was convicted by a jury in the Oakland Circuit Court,
    Richard D. Kuhn, J., of conspiracy to possess with intent to
    deliver more than 650 grams of cocaine. Previously, the defen-
    dant had been indicted in the United States District Court for
    the Eastern District of Michigan for conspiracy to possess with
    intent to distribute more than five kilograms of cocaine, a
    charge that was dismissed as part of a plea agreement that led
    to the defendant's conviction on his plea of guilty of laundering
    monetary instruments. The defendant also had been indicted
    and convicted in the United States District Court for the
    Middle District of Florida for conspiracy to possess with intent
    to distribute more than five kilograms of cocaine and for
    interstate travel to facilitate a cocaine conspiracy. Before trial
    of the state charge, the defendant moved to quash the state
    indictment on the ground of double jeopardy. The trial court
    denied the motion, holding that while the Michigan and federal
    prosecutions arose out of the same transaction, the defendant's
    double jeopardy rights were not violated because the state's
    interests in prosecuting the defendant were substantially differ-
    ent than the federal government's interests. The defendant
    appealed.

    The Court of Appeals *held:*

    1. The panel in *People v Hermiz,* 207 Mich App 449 (1994),
    held in the appeal of one of the defendant's coconspirators that
    the Florida federal prosecution did not preclude on double
    jeopardy grounds the state prosecution. That holding is binding
    on this panel pursuant to Administrative Order No. 1994-4.
    Accordingly, the present prosecution was not precluded by
    reason of the federal prosecution in Florida.

    2. A trial court's determinations concerning whether state

REFERENCES

Am Jur 2d, Appeal and Error §§ 702, 703, 821, 873, 883; Criminal
    Law § 282.
Conviction or acquittal in federal court as bar to prosecution in
    state court for state offense based on same facts—modern view. 6
    ALR4th 802.

and federal prosecutions arose out of a single criminal transaction and whether a state's interests in the prosecution of an individual are substantially distinct from the interests of the federal government in prosecuting the individual are reviewed de novo, with the trial court's findings of fact being reviewed for clear error.

3. The trial court's finding that the state's prosecution of the defendant and the federal prosecution of the defendant in the United States District Court for the Eastern District of Michigan arose out of the same transaction is not clear error. The time periods alleged, the parties named and charged, and the acts alleged in the respective state and federal indictments all support the conclusion that the crimes charged in the two indictments arose out of the same transaction.

4. In determining whether the federal prosecution satisfied Michigan's interests in prosecuting the defendant under MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i), it is necessary to consider whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why the federal government cannot be entrusted to vindicate fully this state's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive.

5. The maximum penalty under both the state and federal statute is life imprisonment. The fact that the state statute makes the life sentence mandatory without possibility of parole while the federal statute permits parole and a sentence for a term of years does not render the penalties of the two statutes greatly disparate.

6. There is no reason why the federal government cannot be entrusted to vindicate fully Michigan's interests in securing a conviction. The fact that the federal prosecutor agreed to dismiss the drug delivery charge during plea negotiations does not demonstrate that the federal government is any less committed to combating drug crimes than is the State of Michigan.

7. Although a conviction under 21 USC 841(b)(1)(A)(ii) requires proof of possession of five kilograms of cocaine while a conviction under the Michigan statute requires proof of possession of only 650 grams of cocaine, that alone does not create a substantive difference between the two statutes.

8. The trial court erred in holding that the federal prosecution did not satisfy Michigan's interests in prosecuting the defendant. Accordingly, the state's prosecution of the defendant violated his rights under the Double Jeopardy Clause of the Michigan Constitution, Const 1963, art 1, § 15.

Reversed.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — STANDARD OF RE-
    VIEW.

    A trial court's determinations concerning whether state and
    federal prosecutions arose out a single criminal transaction and
    whether a state's interests in the prosecution of an individual
    are substantially distinct from the interests of the federal
    government in prosecuting the individual are reviewed de novo;
    the trial court's findings of fact are reviewed for clear error.

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — FEDERAL AND STATE
    PROSECUTIONS.

    A determination whether a federal prosecution satisfies a state's
    interests in prosecuting an individual requires consideration
    whether the maximum penalties of the respective statutes
    involved are greatly disparate, whether some reason exists why
    the federal government cannot be entrusted to vindicate fully
    the state's interests in securing a conviction, and whether the
    differences in the statutes are merely jurisdictional or are
    substantive.

3. CONTROLLED SUBSTANCES — FEDERAL AND STATE PROSECUTIONS.

    The federal government's interests in bringing a prosecution for
    conspiracy to possess with intent to distribute more than five
    kilograms of cocaine satisfies the same interests that the State
    of Michigan has in bringing a prosecution for conspiracy to
    possess with intent to deliver more than 650 grams of cocaine
    (21 USC 841[a][1], 841(b)(1)(A)(ii), 846; MCL 333.7401[2][a][i],
    750.157a; MSA 14.15[7401][2][a][i], 28.354[1]).

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *Richard Thompson,* Pros-
ecuting Attorney, *Joyce F. Todd,* Chief, Appellate
Division, and *Robert C. Williams,* Assistant Prose-
cuting Attorney, for the people.

*Laurence R. Imerman,* for the defendant.

Before: MICHAEL J. KELLY, P.J., and CAVANAGH
and M. J. SHAMO,* JJ.

MICHAEL J. KELLY, P.J. Defendant appeals as of
right his conviction of and sentence for conspiracy

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to possess with intent to deliver more than 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i); MCL 750.157a; MSA 28.354(1). The trial court imposed the statutory sentence of mandatory life imprisonment without parole. We reverse.

I

In August 1988, defendant was indicted in the United States District Court for the Eastern District of Michigan for conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 USC 841(a)(1) and 846. Defendant entered into a plea agreement and pleaded guilty of laundering monetary instruments, 18 USC 1956(a)(2)(B)(ii), in exchange for a dismissal of the conspiracy charge. Defendant was sentenced to thirty-three months in federal prison.

In June 1989, defendant was indicted once again in a federal court, this time in the Middle District of Florida, for conspiracy to possess with intent to distribute more than five kilograms of cocaine, 21 USC 841(a)(1) and 846, and interstate travel to facilitate a cocaine conspiracy, 18 USC 1952(a)(3). In July 1990, he was convicted of one count of the former and two counts of the latter and sentenced to one prison term of 264 months and two terms of sixty months, respectively. The terms were to run concurrently with each other but consecutively to the term already being served by defendant.

In July 1990, defendant was charged in the Oakland Circuit Court along with eight others in a single-count indictment alleging thirty-one overt acts as part of a conspiracy to violate § 7401(2)(a) (i). Before trial, defendant filed a motion to quash the indictment on double jeopardy grounds, which he later amended. The circuit court denied the

motion nine months after the defendant had been found guilty as charged by a jury on July 3, 1991.

## II

Defendant argues that his double jeopardy rights were violated because his indictment in the state court arose out of the same transaction on which his convictions in the federal court were based. However, with respect to the federal prosecution in Florida, our review of the record reveals no material distinction between the facts of this case and those in *People v Hermiz,* 207 Mich App 449; 526 NW2d 1 (1994), in which another panel of this Court rejected a similar double jeopardy challenge by one of defendant's coconspirators, Issam Hermiz. We are bound under Administrative Order No. 1994-4 to follow the holding in *Hermiz.*

The *Hermiz* decision, however, does not address the prosecution in Michigan federal court, because Issam Hermiz based his double jeopardy challenge only on the Florida federal prosecution. Unlike this defendant, Hermiz was not named in the Michigan federal indictment. We must determine whether defendant's conviction in Michigan federal court barred his subsequent conviction in Michigan state court under double jeopardy principles. We hold that it did.

## A

The Double Jeopardy Clause of the Michigan Constitution[1] prohibits prosecution of an offense arising out of the same criminal act that forms the basis of a prior prosecution in another jurisdiction unless it appears from the record that the interests of Michigan and those of the jurisdiction that

---

[1] Const 1963, art 1, § 15.

initially prosecuted are substantially different. *People v Cooper,* 398 Mich 450, 461; 247 NW2d 866 (1976). Thus, the threshold question in this case is whether defendant's conviction under Michigan law arose out of the same conspiracy or, in the words of *Cooper,* the "same criminal act" as his conviction in Michigan federal court. The Michigan Constitution requires resolution of this issue case by case under the "same transaction test." *People v McMiller,* 202 Mich App 82, 85; 507 NW2d 812 (1993). This test looks at whether the charges grow out of a "continuous time sequence" and demonstrate a "single intent and goal." *Id.*

The "same transaction test" is broader than its federal counterpart, the "same elements test." See *United States v Dixon,* 509 US —, —; 113 S Ct 2849; 125 L Ed 2d 556, 568 (1993), overruling *Grady v Corbin,* 495 US 508; 110 S Ct 2084; 109 L Ed 2d 548 (1990); *McMiller, supra* at 84-85. Nonetheless, we find the factors considered under the federal test useful in applying the Michigan test, particularly in the context of conspiracies. The test used by a majority of federal courts focuses on the totality of the circumstances and considers the following factors: (1) time, (2) persons acting as coconspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case, and (5) the places where the events alleged as part of the conspiracy took place. See *United States v Thomas,* 759 F2d 659, 662 (CA 8, 1985); *United States v Marable,* 578 F2d 151, 154 (CA 5, 1978).

The trial court reviewed these factors and determined that the Michigan state and federal prosecutions arose out of the same transaction. How-

ever, it ultimately concluded that defendant's double jeopardy rights were not violated because, under the second prong of the *Cooper* analysis, the state interests in prosecuting defendant were substantially different from the federal interests. While review de novo applies to a trial court's holdings concerning whether there was a single criminal transaction and whether the state interests are substantially distinct, see *McMiller, supra* at 84-85; *People v Bero,* 168 Mich App 545, 558-559; 425 NW2d 138 (1988), the court's findings of fact are reviewed for clear error, *People v Stoughton,* 185 Mich App 219, 227; 460 NW2d 591 (1990); *United States v Thomas, supra* at 662. Giving all due deference to the trial court's findings of fact under the "same transaction test," we find no error in its conclusion that defendant's state and federal prosecutions arose out of the same transaction.

The record in this case indicates that the conspiracy charges in the Michigan state and federal indictments clearly arose out of the same transaction. Most notably, the time frame of the state indictment, January 1985 to August 1989, completely encompasses the time frame of the federal indictment, January 1987 to October 1988. Under the federal indictment, defendant was alleged to have been part of a drug conspiracy along with several others who were also listed, though not named, in the state indictment as participants in the drug transactions. Defendant further was alleged to have "met with coconspirators at various locations and obtained quantities of cocaine for distribution in the Eastern District of Michigan and elsewhere." A similar allegation in the same paragraph charged that defendant "met with coconspirators at various locations where he delivered the proceeds of cocaine distribution to oth-

ers." In the following paragraph, Basam Jarges, one of defendant's coconspirators, was alleged to have done the same.

The charges against defendant in the state indictment were strikingly similar. Although the time frame of the state indictment was broader, the most specific of the few overt acts attributed to defendant occurred between November 27, 1987, and January 30, 1988—well within the time frame of the federal indictment. Furthermore, much like the charges in the federal indictment, these acts consisted of meetings "with Jaime Giraldo and Norberto Giraldo, in various locations, including Southfield, Michigan. The purpose of the meetings was to obtain cocaine and to return money to pay for the cocaine." In the same paragraph, coconspirator Basam Jarges was alleged to have done the same. Jaime and Norberto Giraldo were named in the federal indictment and alleged to have obtained cocaine on a periodic basis.

The only other paragraphs of the state indictment referring to defendant simply stated, first, that defendant began working for the Kalasho organization in 1986, second, that defendant traveled with several conspirators to a home in Sterling Heights, Michigan, in December 1988 to recover two kilograms of cocaine stolen from the Kalasho organization, and third, that defendant worked as a "lieutenant" in the Kalasho organization during 1988, delivering cocaine on behalf of the organization. We consider these additional references either too isolated or too general to undermine the trial court's ruling concerning double jeopardy. The transcripts from defendant's trial and other hearings also fail to provide reasons for reversing the ruling of the trial court. In fact, the transcripts provide support for its finding that the state and federal indictments were made

possible by a joint state-federal task force investigation of the drug conspiracy.

The other parties named in each indictment were also strikingly similar. Defendant and coconspirator Basam Jarges were charged in both indictments. Six others named as participants, but not charged, in the state indictment were charged in the federal indictment. A witness at defendant's trial in state court was also named in the federal indictment. The significant overlap bolsters the trial court's conclusion that the state and federal prosecutions arose out of the same transaction.

B

We next review the trial court's application of the second prong of the *Cooper* double jeopardy test: Whether the federal prosecution satisfied Michigan's interest in prosecuting defendant under § 7401(2)(a)(i). *Cooper, supra* at 461. In *Cooper,* the Supreme Court noted three factors relevant to this issue:

> [W]hether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive. [*Id.*]

These factors are nonexclusive; other factors favoring a defendant's constitutional right are appropriately considered. *People v Gay,* 407 Mich 681, 695; 289 NW2d 651 (1980).

With respect to the first factor, only a great disparity in the sentences authorized by the state and federal drug delivery statutes would suffice to allow a subsequent prosecution in Michigan. *Peo-*

*ple v Formicola,* 407 Mich 293, 298; 284 NW2d 334 (1979). The maximum penalty to be considered is the potential statutory sentence, not the actual sentence. *Gay, supra* at 695. Here, the maximum penalty under the federal charge, 21 USC 841(b)(1) (A)(ii), was life imprisonment. The maximum penalty under state law is the same. Section 7401(2)(a) (i). Although the Michigan penalty differs in being mandatory, that does not make the sentences "greatly disparate." In theory, the potential maximum punishments are the same. See *Gay, supra* at 697.

With respect to the second factor, there is no reason why the federal government cannot be entrusted to vindicate fully Michigan's interest in securing a conviction. The fact that a conviction was never obtained on the drug-delivery charge is irrelevant. What is relevant is the fact that the federal government had the ability to prosecute defendant on that charge. *People v Tyler,* 100 Mich App 782, 791; 300 NW2d 411 (1980). That the prosecutor agreed to dismiss the drug-delivery charge during plea negotiations can be ascribed to a variety of alternatives within a district attorney's discretion but, we surmise, not to a lack of commitment to combat drug crimes, the same commitment that fueled the state prosecution.

Finally, with respect to the third factor, the only difference between the statutes in this case is the amount of cocaine required for conviction—five kilograms under 21 USC 841(b)(1)(A)(ii) and 650 grams under § 7401(2)(a)(i). This alone does not constitute a substantive difference.[2] Clearly, a con-

---

[2] Obviously, the federal quantum is significantly greater—in fact, about eight times greater—than the amount required for conviction under the Michigan statute. The reverse argument—i.e., that dealers are subject to life imprisonment more readily under Michigan law—is not on point here.

viction under the Michigan statute is supported by a conviction under the federal statute.

The trial court believed that the "policy and reasoning behind Michigan's statute makes [sic] it substantively different than the federal statutes." The court noted that, unlike Michigan, Congress allowed for the possibility of rehabilitation. However, this reasoning ignores the rule in *Gay, supra,* regarding maximum penalties. The "policy and reasoning" of the Michigan statute is reflected in the maximum sentence, which, we have concluded, is not "greatly disparate" from the sentence under the federal statute.

We conclude that the federal prosecution satisfied Michigan's interest in prosecuting defendant under MCL 333.7401(2)(a)(1); MSA 14.15(7401)(2)(a) (1). Accordingly, defendant's conviction violates the Double Jeopardy Clause of the Michigan Constitution. Because of our holding on this issue, we need not address the remainder of defendant's arguments. Suffice it to say, we find them all meritless.

Reversed.