PEOPLE v CHILDERS

Docket No. 178825. Submitted April 3, 1996, at Lansing. Decided August
    23, 1996, at 9:35 A.M. Leave to appeal sought.

Gregory D. Childers pleaded nolo contendere in the Oakland Circuit
    Court, Robert C. Anderson, J., to four counts of first-degree crimi-
    nal sexual conduct involving his minor daughter. The defendant, a
    gunnery sergeant in the United States Marine Corps, had been
    charged previously in a court-martial with ten counts of violating
    the Uniform Code of Military Justice with regard to charges of
    rape, sodomy, and indecent liberties involving his daughter. Four of
    the ten counts, rape-A, rape-B, sodomy-A, and sodomy-B, pertain to
    events alleged to have occurred in Michigan. He pleaded guilty of
    seven of the ten counts, including rape-B and sodomy-B; three
    counts, including rape-A and sodomy-A, were withdrawn. The fac-
    tual underpinnings of the four Oakland County charges paralleled
    those underlying rape-A and rape-B and sodomy-A and sodomy-B.
    The defendant's plea in Oakland County was conditioned on the
    defendant receiving sentences of the same length as the military
    sentence and that the sentences be served concurrently with each
    other and the military sentence. The defendant also retained his
    right to appeal the issue whether the prosecution resulted in a vio-
    lation of the double jeopardy prohibition. The defendant appealed
    by leave granted.

    The Court of Appeals held:

    1. The military prosecution constituted a prior federal prosecu-
tion for purposes of double jeopardy analysis.

    2. The withdrawn military charges were not dismissed pursuant
to a plea agreement. Because the defendant was never placed in
jeopardy with respect to the dismissed charges, his subsequent
prosecution in Michigan cannot constitute double jeopardy and it is
unnecessary for the Court of Appeals to consider whether the con-
duct underlying the rape-A and sodomy-A charges is the same con-
duct that supported the two convictions of first-degree criminal
sexual conduct with occurrence dates of July 1989 and December
1989. The constitutional prohibition against double jeopardy was
not violated by the Oakland County convictions of first-degree

criminal sexual conduct with occurrence dates of July 1989 and December 1989, and those two convictions must be affirmed.

3. The prosecution in Oakland County with regard to the two first-degree criminal sexual conduct charges with occurrence dates of July or August 1990 was based on the same events as two of the military charges to which the defendant pleaded guilty, rape-B and sodomy-B. The double jeopardy prohibition requires the reversal of those two convictions.

Affirmed in part and reversed in part.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — STATE PROSECUTIONS — PRIOR FEDERAL PROSECUTIONS.

A state prosecution of a defendant for the same conduct that formed the basis of a prior federal prosecution is barred by Const 1963, art 1, § 15 where the interests of the state are not substantially different from those vindicated by the federal prosecution; where the social interests of the state are not addressed in substance by the federal statute, a second prosecution is permissible.

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — PRIOR FEDERAL PROSECUTIONS.

The facts that should be considered in determining whether a prior federal prosecution has satisfied the state's interests in prosecuting a defendant include whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why the federal prosecution cannot be entrusted to vindicate fully the state's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive; the factors to be taken into consideration when comparing statutes to determine whether they are substantially different are whether the statutes prohibit the same type of conduct, whether the interests sought to be protected are the same, and whether the same proofs are required to establish the prohibited offenses.

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MILITARY PROSECUTIONS — PRIOR FEDERAL PROSECUTIONS.

A military prosecution constitutes a prior federal prosecution for purposes of double jeopardy analysis.

4. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — PRETRIAL WITHDRAWAL OF CHARGES.

The withdrawal of one or more counts of an indictment before the defendant's trial does not bar a subsequent prosecution of the defendant with regard to the same charges.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prose-

cuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Thomas R. Grden,* Assistant Prosecuting Attorney, for the people.

*Sibert & Sibert* (by *Charles M. Sibert*), for the defendant on appeal.

Before: O'CONNELL, P.J., and HOOD and C. L. HORN,[*] JJ.

O'CONNELL, P.J. Defendant, a gunnery sergeant in the United States Marine Corps, was court-martialed for violations of the Uniform Code of Military Justice (UCMJ), 10 USC 801 *et seq.* involving the sexual molestation of his daughter. In the August 1992 court-martial, defendant pleaded guilty to charges of rape, sodomy, and indecent liberties. He was sentenced to twenty-four months' confinement.

In February 1993, the Oakland County Prosecutor filed similar charges against defendant, alleging four counts of first-degree criminal sexual conduct. MCL 750.520b(1)(a) and (b); MSA 28.788(2)(1)(a) and (b). Defendant tendered pleas of nolo contendere with respect to all four counts. The circuit court imposed sentences identical to those imposed by the court-martial and ordered the sentences to be served concurrently with each other and concurrently with defendant's military sentence.

Defendant now appeals by leave granted, raising only the issue of double jeopardy. He contends that because the state convictions stem from the same acts underlying his military convictions, his state convictions must be reversed. While we agree with the

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

legal component of defendant's argument, we find that two of the four state convictions are predicated on acts that did not result in military convictions. Accordingly, we affirm these two convictions, but reverse the two convictions that are duplicative of military convictions.

I

In April 1992, defendant was court-martialed. He was charged with four counts (or specifications) of violating the UCMJ, art 120 (10 USC 920), rape; four counts of violating the UCMJ, art 125 (10 USC 925), sodomy; and two counts of violating the UCMJ, art 134 (10 USC 934), indecent liberties. All the charges involved his minor daughter and were alleged to have occurred at various times between August 1987 and March 1992. Following a full, written confession, defendant pleaded guilty of seven of the ten counts and was sentenced to twenty-four months' confinement.

Four of the ten counts (two rape specifications and two sodomy specifications) pertain to the present appeal because they concern events alleged to have occurred within the State of Michigan. For ease of discussion, these will be referred to hereinafter as rape-A, rape-B, sodomy-A, and sodomy-B.[1]

The rape-A count alleged that defendant had raped a minor female (his daughter) in Troy or Ferndale, Michigan, between May 1989 and September 1989.

---

[1] Rape-A refers to the alleged violation of the UCMJ, art 120, rape, specification two. Rape-B refers to the alleged violation of the UCMJ, art 120, rape, specification three. Sodomy-A refers to the alleged violation of the UCMJ, art 125, sodomy, specification two. Sodomy-B refers to the alleged violation of the UCMJ, art 125, sodomy, specification three.

This count was amended to allege that the rape had occurred in a state other than Michigan.[2] The charge was subsequently withdrawn.

The rape-B count alleged that defendant had raped his daughter in or near Troy, Michigan, in August 1990. Defendant pleaded guilty.

The sodomy-A count alleged that defendant had committed sodomy with his daughter in Troy or Ferndale, Michigan, between September 1989 and May 1990. Defendant pleaded not guilty, and the charge was withdrawn.

The sodomy-B count alleged that defendant had committed sodomy with his daughter in or near Troy, Michigan, in August 1990. Defendant pleaded guilty.

Approximately five months after defendant entered his pleas in the court-martial proceedings, the Oakland County Prosecutor, in three prosecutions, charged defendant with four counts of first-degree criminal sexual conduct involving his daughter. The factual underpinnings of these charges closely paralleled those underlying the military charges. Defendant was alleged to have engaged in sodomy with his daughter and to have engaged in intercourse with her in 1989 and again in 1990. While these acts, under the UCMJ, constituted two counts of sodomy and two counts of rape, because of differences in Michigan's criminal statutes, these acts constituted four counts of first-degree criminal sexual conduct under Michi-

---

[2] More specifically, the count was amended to allege that the rape had occurred in Paradise, Texas. Defendant pleaded guilty of the amended count. We do not mention these additional facts in the main text of the opinion because they have no bearing on the disposition.

gan law.[3] Defendant pleaded nolo contendere to all four counts.

For ease of reference, the military charges and the corresponding Oakland County charges are set forth below in tabular form.

| Military Specification | Date of Occurrence | Disposition | Oakland County Charge | Date of Occurrence | Disposition |
|---|---|---|---|---|---|
| Rape-A | 5/89-9/89 | Withdrawn | CSC-1 | 12/89 | Nolo Contendere |
| Sodomy-A | 9/89-5/90 | Withdrawn following plea of not guilty | CSC-1 | 7/89 | Nolo Contendere |
| Rape-B | 8/90 | Guilty Plea | CSC-1 | 7/90 | Nolo Contendere |
| Sodomy-B | 8/90 | Guilty Plea | CSC-1 | 7/90 | Nolo Contendere |

As is evident from the preceding table, the dates of occurrence alleged in the military prosecution do not correspond exactly vis-à-vis the parallel Oakland County charges. While this is discussed further below, we would note that the victim was uncertain whether the 1990 events occurred in late July 1990 or early August 1990. In fact, the Oakland County charges originally alleged that the acts took place in August 1990 and were amended to allege that the acts took

---

[3] Under Michigan law, defendant was alleged, with respect to the 1989 charges, to have performed cunnilingus on a person under thirteen years of age, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and to have vaginally penetrated a person under thirteen years of age, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). Because the victim turned thirteen in 1990, with respect to the 1990 charges, defendant was alleged to have performed cunnilingus on a blood relative between thirteen and sixteen years of age, MCL 750.520b(1)(b)(ii); MSA 28.788(2)(1)(b)(ii), and to have vaginally penetrated a blood relative between thirteen and sixteen years of age. MCL 750.520b(1)(b)(ii); MSA 28.788(2)(1)(b)(ii). Though Michigan law distinguishes between these acts, each constitutes first-degree criminal sexual conduct.

place in July 1990 only after the victim expressed uncertainty regarding the exact dates.

Defendant's pleas of nolo contendere were tendered pursuant to a plea agreement with the court as authorized by *People v Cobbs,* 443 Mich 276; 505 NW2d 208 (1993). Over the objection of the prosecution, defendant's pleas were conditioned on receiving sentences of the same length as that imposed for his military convictions that were to be served concurrently with each other and with the military sentence.[4] Additionally, pursuant to the agreement, defendant retained his right to appeal the issue of double jeopardy. He promptly applied for leave to appeal, which this Court granted.

II

In *Bartkus v Illinois,* 359 US 121, 137; 79 S Ct 676; 3 L Ed 2d 684 (1959), the United States Supreme Court held that, under the theory of dual sovereignty, where a defendant is prosecuted in a federal court, his subsequent state court prosecution for the same criminal act does not constitute double jeopardy where the act violated both state and federal law. As stated in *Heath v Alabama,* 474 US 82, 88; 106 S Ct 433; 88 L Ed 2d 387 (1985), as quoted in *People v Mezy,* 453 Mich 269, 278-279; ___ NW2d ___ (1996):

> "The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses.' As the Court explained in *Moore v Illinois,* [55

---

[4] We glean from the record that the court-martial imposed only one sentence rather than four concurrent sentences.

US] (14 How) 13, 19 [14 L Ed 306] (1852), '[a]n offence, in its legal signification, means the transgression of a law.' Consequently, when the same act transgresses the laws of two sovereigns, '[i]t cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offenses, for each of which he is justly punishable.' " [Citations omitted.]

This holding was questioned by the Michigan Supreme Court in *People v Cooper*, 398 Mich 450, 457; 247 NW2d 866 (1976), in which the Court opined that "[t]he trend in United States Supreme Court decisions leads us to conclude that the permissibility of Federal-state prosecutions as a requirement of our Federal system is open to reassessment." The *Cooper* Court ruled that because a "defendant's interests in not being forced twice to run the gauntlet are substantial," a second state prosecution against a defendant for the same conduct that formed the basis of a federal prosecution is barred by Const 1963, art 1, § 15 where the interests of the state are not "substantially different" from those vindicated by the federal prosecution. *Cooper*, pp 460, 461. However, the Court soon emphasized that in the "rare instance where the social interests of the state are not addressed in substance by the Federal statute," a second prosecution is permissible. *People v Gay*, 407 Mich 681, 695; 289 NW2d 651 (1980).

The *Cooper* Court delineated the factors that should be considered when determining whether a prior federal prosecution has satisfied the state's interests in prosecuting a defendant. These factors include "whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted

to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive." *Cooper*, *supra*, p 461. The *Cooper* decision may have been lacking as a bellwether, see, e.g., *Heath*, *supra*, but it was, nonetheless, subsequently reaffirmed in *People v Formicola*, 407 Mich 293; 284 NW2d 334 (1979), and in *Gay*, *supra*. The *Cooper* holding also withstood a recent challenge in *Mezy*, *supra* p 280, where three of seven justices advocated the outright overruling of *Cooper*. Thus, *Cooper* remains the law of Michigan. See *People v Hellis*, 211 Mich App 634, 651; 536 NW2d 587 (1995).

Applying the *Cooper* standards to the present case creates three subissues: first, whether the court-martial was a prior prosecution as contemplated by *Cooper*, second, whether defendant was placed in jeopardy with respect to the charges that were withdrawn in the military proceeding, and, third, whether the remaining charges in the court-martial involved the same conduct for which defendant was charged and convicted in Oakland County. We address each of these issues in turn.

### A. WAS THE COURT MARTIAL A PRIOR FEDERAL PROSECUTION?

Whether a military prosecution constitutes a prior federal prosecution for purposes of double jeopardy analysis is a question of first impression in Michigan. However, every court to consider the question has concluded that the decisions and rulings of military courts are to be accorded the same finality and conclusiveness as those of a civil court. The seminal case in this area of the law is *Grafton v United States*, 206

US 333, 348; 27 S Ct 749; 51 L Ed 1084 (1907), in which the Supreme Court stated that

> [i]t thus appears to be settled that the civil tribunals cannot disregard the judgments of a general court-martial against an accused officer or soldier, if such court had jurisdiction to try the offense set forth in the charge and specifications; this, notwithstanding the civil court, if it had first taken hold of the case, might have tried the accused for the same offense or even one of higher grade arising out of the same facts.

In *State ex rel Cobb v Mills*, 82 Okla Crim 155, 184; 163 P2d 558 (1945), after an exhaustive analysis of existing case law, the Oklahoma Criminal Court of Appeals rejected the contention that a court-martial was not a "court" because of its limited and special jurisdiction and the fact that it is a part of the executive rather than the judicial branch of the federal government. A similar result was recently reached in *In re Booth v Clary*, 83 NY2d 675, 678-680; 613 NW2d 110; 635 NE2d 279 (1994).

On appeal, the prosecutor has presented no colorable argument to the effect that a court-martial prosecution constitutes anything less than a federal prosecution. Therefore, we conclude that a military prosecution is a federal prosecution for purposes of double jeopardy analysis. Consequently, if the Oakland County prosecutions in the present case stem from the same criminal conduct as that underlying the completed military prosecutions, retrial of defendant is barred by Const 1963, art 1, § 15 unless Michigan's interest in obtaining a conviction differs substantially from the interests of the military. *Cooper, supra*, pp 460-461.

B. WAS THE STATE PRECLUDED ON FORMER JEOPARDY GROUNDS
FROM PROSECUTING DEFENDANT FOR CONDUCT FORMING THE
BASIS OF THE WITHDRAWN COURT MARTIAL CHARGES, THAT IS,
THE RAPE-A AND SODOMY-A CHARGES?

The four charges faced by defendant in the court-martial proceeding fall into two categories, those that were withdrawn before disposition, i.e., the rape-A and sodomy-A charges, and those of which defendant was convicted, the rape-B and sodomy-B charges. With respect to those charges that were withdrawn, defendant contends that because these military charges were dismissed pursuant to a plea bargain agreement, state prosecution is barred.[5]

However, the record does not support defendant's contention that the withdrawn military charges were "dismissed" pursuant to a plea bargain agreement. We have meticulously reviewed the record, but find only oblique references to a plea bargain agreement. While it appears that some type of agreement was reached, the only reference to the substance of the agreement is a statement in the report of defendant's military convictions that provides: "The pretrial agreement had no effect in this case." Defendant has presented no evidence to the contrary. Therefore, we conclude that the withdrawn military charges were not "dismissed" pursuant to a plea bargain agreement.

Rather, the evidence indicates that the charges in issue were simply withdrawn. It has generally been held in other jurisdictions that in cases in which a defendant pleads guilty of an offense, jeopardy does not attach until the plea is accepted. See 22 CJS, Criminal Law, § 223, pp 271-272. Similarly, withdrawal

---

[5] The rape-B and sodomy-B charges are addressed in section C.

of one or more counts of an indictment before trial does not bar a subsequent prosecution regarding the charges. *Id.*, §§ 226, 229, pp 274, 275. Defendant has directed this Court's attention to no authority suggesting that military prosecutions deviate from this general rule.

Thus, because the record evidence indicates that the rape-A and sodomy-A charges were withdrawn rather than dismissed, defendant was never placed in jeopardy with respect to these charges. Because defendant was never placed in jeopardy with respect to these charges, his subsequent prosecution in Michigan obviously cannot constitute double jeopardy. Therefore, it is unnecessary for this Court to consider whether the conduct underlying the rape-A and sodomy-A charges is the same conduct that supported two of his four state convictions. Because the rape-A and sodomy-A charges were withdrawn, defendant's prosecution in Oakland County was not barred by the prohibition against double jeopardy with respect to these convictions. Accordingly, we affirm these convictions.

C. WAS THE STATE PRECLUDED ON FORMER JEOPARDY GROUNDS FROM PROSECUTING DEFENDANT FOR CONDUCT FORMING THE BASIS OF THE MILITARY CHARGES OF WHICH DEFENDANT WAS CONVICTED, THAT IS, THE RAPE-B AND SODOMY-B CONVICTIONS?

Turning, then, to the rape-B and sodomy-B convictions, defendant's conduct in late July 1990 or early August 1990 arguably formed the basis for two of his military convictions as well as two of his convictions in Oakland County. According to defendant's statement at his court-martial, the acts took place in the victim's bedroom at her grandmother's house "late at night" during August 1990. Although the victim stated

that she remembered the incident as having occurred in July 1990, she also testified that it was late at night in her grandmother's house and that there was only one night that her father molested her that summer at her grandmother's house. Consequently, defendant's prosecution for this conduct could potentially be barred by *Cooper, supra,* p 461, because the rape-B and the sodomy-B charges in the court-martial proceeding were prosecutions for the same conduct that formed the basis of two of the convictions obtained in Oakland County.

To reiterate, the *Cooper* Court set forth three factors to consider when determining whether the same conduct could support both federal and state convictions: "whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive." *Id.*

In the present case, we find no substantial difference in the interests advanced by the federal and state prosecutions. First, the maximum penalties in the federal and state prosecutions are identical. Both the military statute and the Michigan statute provide for a maximum penalty of life imprisonment. Therefore, because both statutes obviously consider defendant's conduct to be in the most severe category of criminal behavior, nothing in the penalties allowed under the respective statutes suggests that different interests were advanced by the separate prosecutions.

Second, no evidence suggests that Michigan could not trust the court-martial to vindicate this state's

interest in obtaining a conviction. Defendant's military prosecution with respect to the charges currently in issue, those arising from the July or August 1990 incident, resulted in defendant's pleading guilty and confessing fully. In *Gay, supra,* p 703, the Supreme Court agreed with the trial court's characterization that the pertinent inquiry under this criterion is whether " 'Michigan's interests in a conviction were vigorously, competently and swiftly pursued by Federal authorities in Federal court.' " In the instant case, there is nothing in the record that would create a doubt regarding whether defendant's military prosecution met this standard.

Third, there is no material substantive difference between the statutes in issue. In *People v Formicola, supra,* p 300, the Supreme Court outlined the factors to be taken into consideration when comparing statutes to determine whether they are substantively different: first, whether the statutes prohibit the same type of conduct, second, whether the interests sought to be protected are the same, and, third, whether the same proofs are required to establish the prohibited offenses.

With respect to the first *Formicola* factor, both art 120 of the UCMJ and the relevant subsections of MCL 750.520b(1); MSA 28.788(2)(1), prohibit substantially the same conduct, namely, the sexual assault of a minor. Art 120 prohibits sexual penetration by force of a female under the age of sixteen years who is not the wife of the offender. The section of the Michigan statute under which defendant was charged in connection with the sexual intercourse that occurred in July or August of 1990 prohibits sexual penetration of a person between the ages of thirteen and sixteen

years where the actor and victim are related "by blood or affinity to the fourth degree." MCL 750.520b(1)(b)(ii); MSA 28.788(2)(1)(b)(ii). Although the military statute does not require a relationship between the defendant and the victim and the Michigan statute does not require proof of force in this particular subsection, this is likely attributable to the relatively coarse military statute as compared to the Michigan statute, which has been refined to distinguish between dozens of different types of sexual assault. However, because the main thrust of both the military statute and the Michigan statute under which defendant was convicted is to prohibit the sexual assault of a minor, we find the two to be substantially similar. See *Gay, supra.*

With respect to the second *Formicola* factor, the statutes seek to protect the same interests. In the transcript of defendant's military prosecution, the interests of the military in sentencing defendant were stated to be the protection of society, the punishment and rehabilitation of the wrongdoer, the deterrence of others, and the maintenance of discipline and good order in the military. Except for the military's interest in preserving order and discipline, these are the same interests served by Michigan's criminal statues.

Finally, with respect to the third *Formicola* factor, the proofs required in the respective prosecutions were similar. While the differences mentioned in the context of the first *Formicola* factor exist in the context of proof as well, we find these differences to be inconsequential when considered in the context of the larger prosecution of the sexual assault of a minor.

In sum, the testimony of the defendant and the victim agree that one episode of sexual assault occurred in July or August 1990. Given the forthrightness of both parties throughout the proceedings below, we believe that only one incident occurred during this period. Consequently, we conclude that one of defendant's convictions of first-degree criminal sexual conduct stems from the conduct on the night that supported his rape-B conviction, and that another of his first-degree criminal sexual conduct convictions stems from the conduct on the night that supported his sodomy-B conviction. After considering the relevant *Cooper* factors, as elucidated in *Formicola*, we hold that the federal prosecution satisfied Michigan's interest in obtaining convictions with respect to the criminal episode that occurred in July or August 1990. Accordingly, we find that defendant's Michigan convictions for his criminal activity in July or August 1990 constitute double jeopardy because he was previously convicted for this activity while in the military. These convictions are reversed.

Affirmed in part and reversed in part.