PEOPLE v CHILDERS

Docket No. 107636. Argued October 7, 1998 (Calendar No. 12). Decided
    December 28, 1998.

Gregory D. Childers pleaded nolo contendere in the Oakland Circuit
    Court, Robert C. Anderson, J., to four counts of first-degree crimi-
    nal sexual conduct involving his minor daughter. Previously, he had
    pleaded guilty in a Marine court-martial proceeding to charges aris-
    ing from the same criminal acts. The Court of Appeals, O'CONNELL,
    P.J., and HOOD and C. L. HORN, JJ., affirmed two convictions, but
    reversed two convictions that were duplicative of the prior military
    convictions. 218 Mich App 431 (1996) (Docket No. 178825). The
    people appeal.

In an opinion by Justice WEAVER, joined by Chief Justice MALLETT,
    and Justices BOYLE and TAYLOR, the Supreme Court held:

The Michigan Constitution's Double Jeopardy Clause does not
    prohibit the state from trying in a state court a defendant who was
    previously convicted in a federal court on charges arising from the
    same criminal acts. The Michigan prosecution was permissible
    under People v Cooper, 398 Mich 450 (1976), because the social
    interests of the state were not satisfied by the military court mar-
    tial of the defendant.

Reversed; convictions reinstated.

Justice CAVANAGH, joined by Justices BRICKLEY and KELLY, dissent-
    ing, stated that while the defendant received different sentences
    from the federal and state courts for his convictions, his potential
    sentencing exposure was substantially similar.

The state and federal interests in this case are not substantially
    different. The maximum penalties under both the military and state
    statutes are identical—life imprisonment. The fact that two statutes
    might seek to serve interests differently does not mean they inher-
    ently serve different interests.

*Frank J. Kelley*, Attorney General, *Thomas L.
Casey*, Solicitor General, *David Gorcyca*, Prosecuting
Attorney, *Robert Williams*, Chief, Appellate Division,

and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Desiree M. Ferguson*) for the defendant-appellee.

Amicus Curiae:

*Norman W. Donker*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

WEAVER, J. This Court is presented with the question whether Michigan's Double Jeopardy Clause, Const 1963, art 1, § 15, precludes the state from trying defendant when he was previously convicted in the federal courts[1] on charges arising from the same criminal acts. We hold that the state prosecution was not prohibited, reverse the judgment of the Court of Appeals, and reinstate defendant's convictions.

I

Defendant, a gunnery sergeant in the United States Marine Corps, was charged with violations of the Uniform Code of Military Justice on the basis of the sexual molestation of his minor daughter at various locations around the country, including Michigan. In August of 1992, defendant pleaded guilty in court-martial proceedings of rape, sodomy, and indecent liberty, for which he was sentenced to twenty-four months confinement. Two of the counts concerned events that occurred in the state of Michigan, specifi-

---

[1] The Court of Appeals held, and the parties do not dispute, that a military court conviction is tantamount to a conviction in federal court for double jeopardy purposes. See *Grafton v United States*, 206 US 333, 348; 27 S Ct 749; 51 L Ed 1084 (1907).

cally, that he raped his daughter in or near Troy, Michigan, in August 1990, and that he committed sodomy with her in or near Troy, Michigan, in August 1990.

In July of 1993, defendant was charged in state court with four counts of first-degree criminal sexual conduct. Defendant pleaded nolo contendere with respect to all four counts, reserving his right to appeal on the issue of double jeopardy. The circuit court imposed concurrent sentences of two to twenty years, to be served with defendant's military sentence. The Court of Appeals affirmed two of the convictions, but reversed two convictions that were duplicative of the prior military convictions. 218 Mich App 431; 554 NW2d 336 (1996). We granted the prosecutor leave to appeal. 456 Mich 904 (1997).

The sole issue before us is whether the state prosecution violated the Michigan[2] constitutional prohibition against double jeopardy when it was based on the same criminal acts supporting the stipulations to which defendant pleaded guilty at his court martial.

II

Defendant argues that the state prosecution is prohibited under *People* v *Cooper*, 398 Mich 450, 461; 247

---

[2] It is clear that the successive state prosecution does not violate the United States Constitution's prohibition against double jeopardy. The United States Supreme Court has consistently held that successive state and federal prosecutions are not a violation of the Fifth Amendment. *Heath v Alabama*, 474 US 82; 106 S Ct 433; 88 L Ed 2d 387 (1985). It adheres to the dual sovereignty doctrine, which is founded on the common-law conception of crime as an offense against the sovereignty of government. When a defendant breaks the laws of two sovereigns in a single act, he has committed two distinct "offenses." Accordingly, the offender has not been punished twice for the same offense, but rather he has committed two offenses by one act, for each of which he is subject to punishment. *Id.* at 88.

NW2d 866 (1976), which held that the Michigan Constitution "prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the state of Michigan and the jurisdiction which initially prosecuted are substantially different." We conclude that the prosecution was permissible under *Cooper*, because the social interests of the state of Michigan were not satisfied by the military court martial of defendant. Although appellant urges us to overrule *Cooper* and adopt the dual sovereignty rule,[3] we do not consider *Cooper*'s continuing validity at this time because of our finding that the prosecution was permissible even under *Cooper*.

It is clear that both the federal and state prosecutions were based on the same criminal acts. At his military court martial defendant pleaded guilty to one specification of raping his daughter in Troy, Michigan, in August 1990 and to one specification that he committed sodomy with his daughter in Troy, Michigan, in August 1990. In her testimony at the preliminary examination in the Michigan district court, the victim said that there was only one sexual encounter with her father during his visit to Michigan in July of 1990.

Therefore, the key point is whether the state and federal interests are substantially different. *Cooper*, *supra* at 461. Among the factors listed in *Cooper* that are pertinent to a determination whether a federal prosecution satisfies the state's interest are: "whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why

---

[3] In *People v Mezy*, 453 Mich 269; 551 NW2d 389 (1996), a majority of this Court held that there was no need to address the merits of *Cooper*, while three justices voted to overrule *Cooper*.

one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive." *Id.*

In the present case, the military statute and the Michigan statute both provide a maximum penalty of life imprisonment. However, under the military statute, defendant was only sentenced to twenty-four months. In contrast, under the Michigan statute, defendant received a two- to twenty-year sentence and is subject to incarceration beyond the minimum amount of time imposed. The disparity between the two sentences is evidenced by the fact that defendant, who was sentenced on the Michigan charges in 1994, currently remains incarcerated on these charges. Additionally, the Michigan prosecution subjects defendant to registration as a sex offender and mandatory HIV testing. In short, the Michigan penalty is more comprehensive than the military penalty.

Secondly, the military prosecution does not, in real terms, seek to vindicate the victim's interests.[4] Con-

---

[4] The relevant articles to which defendant pleaded guilty in court-martial proceedings read as follows:

10 USC 920, Art 120. Rape and carnal knowledge

(a) Any person subject to this chapter who commits an act of sexual intercourse, by force and without consent, is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct.

(b) Any person subject to this chapter who, under circumstances not amounting to rape, commits an act of sexual intercourse with a person—

(1) who is not that person's spouse; and

(2) who has not attained the age of sixteen years;

is guilty of carnal knowledge and shall be punished as a court-martial may direct.

versely, the Michigan statute[5] seeks, among other goals, to recognize a profound interest in protecting children. In fashioning the criminal sexual conduct statute,[6] the Legislature specifically intended to pro-

---

(c) Penetration, however slight, is sufficient to complete either of these offenses.

(d)(1) In a prosecution under subsection (b), it is an affirmative defense that—

(A) the person with whom the accused committed the act of sexual intercourse had at the time of the alleged offense attained the age of twelve years; and

(B) the accused reasonably believed that that person had at the time of the alleged offense attained the age of sixteen years.

(2) The accused has the burden of proving a defense under paragraph (1) by a preponderance of the evidence.

10 USC 925, Art 125. Sodomy

(a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

(b) Any person found guilty of sodomy shall be punished as a court-martial may direct.

[5] Michigan's first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), to which defendant pleaded guilty, provides in relevant part:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

(a) That other person is under 13 years of age.

(b) That other person is at least 13 but less than 16 years of age and any of the following:

(i) The actor is a member of the same household as the victim.

(ii) The actor is related to the victim by blood or affinity to the fourth degree.

(iii) The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

*     *     *

(2) Criminal sexual conduct in the first degree is a felony punishable by imprisonment in the state prison for life or for any term of years.

[6] MCL 750.520a et seq.; MSA 28.788(1) et seq.

tect young persons from sexual contact by persons with whom they have a special relationship, such as relatives. See *People v Armstrong*, 212 Mich App 121, 127; 536 NW2d 789 (1995). In Michigan, the distinction between sexual conduct with any other minor and with a member of one's family or household is clear. This case makes an excellent example. The victim was thirteen years old at the time of the offenses in question.[7] Had the victim and defendant not been related or of the same household, defendant would have been guilty only of third-degree criminal sexual conduct, MCL 750.520d; MSA 28.788(4),[8] instead of first-degree criminal sexual conduct. The increased penalty embodied in first-degree criminal sexual conduct reflects the fact that there is a special relationship between those people who are related to each other, or living in the same household, and seeks to protect that relationship. *People v Garrison*, 128 Mich App 640, 645-646; 341 NW2d 170 (1983). In contrast, the Uniform Code of Military Justice article does not recognize such a distinction when a defendant has sexual conduct with a minor relative or a member of the defendant's household.

---

[7] The victim was born April 3, 1977, and the offenses took place in August of 1990.

[8] (1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exists:

(a) That other person is at least 13 years of age and under 16 years of age.

\*   \*   \*

(2) Criminal sexual conduct in the third degree is a felony punishable by imprisonment for not more than 15 years.

Accordingly, we hold that the social interests of the state of Michigan were not satisfied by the military court martial of the defendant. We reverse the decision of the Court of Appeals and reinstate defendant's convictions.

MALLETT, C.J., and BOYLE and TAYLOR, JJ., concurred with WEAVER, J.

CAVANAGH, J. I dissent from the conclusion reached by the majority. While it is apparent that the defendant did, in fact, receive different sentences from the federal and state courts on these charges, his potential sentencing exposure was substantially similar. The majority correctly declines the unwarranted invitation of the prosecution to overrule *People v Cooper*, 398 Mich 450; 247 NW2d 866 (1976), but then erroneously attempts to stretch this case to fit within *Cooper*'s "substantially different" exception. *Id.* at 462. Because it is clear to me that the case does not fit within that exception, I would affirm the decision of the Court of Appeals.

I

Now and again, and more recently it seems, this Court is called on to revisit a longstanding doctrine in light of supposed changes in circumstances or logic. A scant two years ago, this Court reviewed a question nearly identical to the one we face today in *People v Mezy*, 453 Mich 269; 551 NW2d 389 (1996). While the Court did not reach the merits of the continuing vitality of *Cooper*, the lead opinion found cause to attack such vitality, compelling the dissent to defend the continuing applicability of *Cooper*. There were questions in *Mezy* regarding whether the defendant indeed had been charged twice for what was substantially

the same act, and, eventually, this Court settled on remanding the matter for further proceedings.

Appellant now calls on us to revisit the basic question of *Cooper*, whether this state will subscribe to the doctrine of "dual sovereignty" in resolving double jeopardy questions dealing with subsequent federal and state prosecutions, a question *Cooper* clearly answered in the negative. While, once again, the parties expend considerable effort disputing whether the acts charged under the state and federal prosecution were in fact the same, it seems the Court has resolved this question affirmatively.[1] The more interesting factual point, however, is that the Court of Appeals has left intact two other convictions of the defendant that resulted in concurrent sentences identical to the ones disputed in this case.[2] Thus, while it is clear that the instant dispute is in no way moot, in that it involves two substantive convictions, it would seem the sole "real-world" effect of our review of this case is to once again subject *Cooper* to the peril of being overruled. I must wonder if the Court's resources would not be better spent visiting areas where we are lacking clearly established precedent that has governed without difficulty over the last twenty years.

That said, the majority having declined to reach *Cooper*, I will refrain from yet another defense of it, continuing to favor the view of Justice LEVIN in part II

---

[1] It is clear that both the federal and state prosecutions were based on the same criminal acts. [*Ante* at 219.]

I do not disagree with this conclusion.

[2] Defendant has applied for leave to appeal from this portion of the holding of the Court of Appeals. By order of this Court, the defendant's application is being held in abeyance for our decision in this case.

of his dissent in *Mezy*. To the extent one might read the majority's opinion to invite an opportunity to return to this area once again, that is expressly disavowed.[3]

II

Turning to the matter as decided by the majority, the majority correctly notes that "the key point is whether the state and federal interests are substantially different."[4] I would hold they are not. As the majority agrees, the *Cooper* factors include the questions "whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive."[5]

As the majority again agrees, the maximum penalties under both the military and state statutes are identical—life imprisonment. The majority falters,

---

[3] Justice LEVIN's dissent in *Mezy* contained a reference that was particularly appropriate to our return to this area of law, even before the Court granted leave in the instant matter:

There is a limit to the amount of error that can plausibly be imputed to prior Courts. If that limit should be exceeded, disturbance of prior rulings would be taken as evidence that justifiable reexamination of principle had given way to drives for particular results in the short term. The legitimacy of the Court would fade with the frequency of its vacillation. [*Planned Parenthood of Southeastern Pennsylvania v Casey*, 505 US 833, 866; 112 S Ct 2791; 120 L Ed 2d 674 (1992). *Mezy* at 303 (LEVIN, J., dissenting).]

[4] *Ante* at 219.

[5] These are the factors listed in *Cooper* that a prosecutor could point to in order to show that the state's interests were not sufficiently vindicated by the federal prosecution. *Id.* at 461. The general teaching of *Cooper* is that, "[w]hen state and Federal interests do coincide, prosecution by one sovereign will satisfy the need of the other." *Id.* at 460.

however, when it proceeds beyond the bounds of the *Cooper* factors to assess the actual sentences imposed. *Cooper* deals in particular with the maximum penalties of the statutes in question. One could infer that this Court recognized a fact that is well known—among various judges there most certainly will be some level of disparity in sentencing. By turning to the maximum penalty proscribed by law, however, one can refer to a benchmark that reflects the seriousness with which a particular jurisdiction views the offense. Here such penalties are exactly equal, and quite severe. The proper conclusion to be drawn then is that both the military system and our state view criminal sexual conduct to be one of the most severe violations of law, and thus subject those who commit such offense to the severe sanction of life imprisonment.[6]

As to the second factor, the majority has pointed to no reason why the federal system could not be entrusted to vindicate Michigan's interests, and, likewise, I can find none to exist. The last factor, how-

---

[6] It is further inappropriate to compare the specific sentences imposed in this case when one considers that the Michigan sentences were imposed pursuant to a negotiated plea of nolo contendere under *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993). The plea was specifically negotiated so that all four sentences would be served concurrently. Additionally, the trial court agreed that the minimum sentence imposed would be one equal to the defendant's military sentence. While the majority would focus on the maximum sentence imposed, the point of this discussion is that the sentence itself was negotiated. Such a case and fact-specific event does not provide an adequate basis for comparing the interests of two jurisdictions in prohibiting a certain type of conduct. Conversely, to the extent the sentencing judge, over the initial objection of the prosecutor, agreed to impose a sentence equal to the federal sentence, it would seem the trial court did not view the federal sentence to be one insufficient to vindicate the state's interests.

ever, is the most telling, and one where the majority, again, clearly fails to grasp the import of *Cooper*.

With regard to whether the differences in the statutes are "merely jurisdictional or are more substantive," the majority seemingly answers with references to the Michigan sex-offender registry and mandatory HIV testing. Such differences are of the sort that seem to clearly be "merely jurisdictional," which is to say, no two jurisdictions are likely to penalize a crime identically. The fact that minor differences may exist between the various federal and state statutes is exactly what *Cooper* was referring to in its exclusion of "merely jurisdictional" differences.[7] Rather than pointing to an underlying disparity in the interests vindicated by the statutes, these minor inconsistencies seem to indicate that Michigan addresses the same basic interests in a slightly different fashion. Such slight distinctions do not amount to the substantive disparities spoken of in *Cooper*. The fact that two statutes might seek to serve interests differently does not mean they inherently serve different interests.

III

While the majority, appropriately, has declined an unwarranted invitation to overrule *Cooper*, I fear that in doing so it seeks to carve an exception to the rule of *Cooper* that would soon leave it but a hollow shell. *Cooper* contains an inherent recognition that the fed-

---

[7] Indeed, it is most likely that such differences exist in nearly all cases, and on both sides of the equation. The military system, for example, has shown a greater preference for including hard labor in its incarceration penalties than has our state's system. See, e.g., *United States v Cuellar*, 22 MJ 529 (NM CMR, 1986), aff'd 27 MJ 50 (CMA, 1988), and *United States v Carter*, 22 MJ 771 (ACMR, 1986), aff'd 26 MJ 428 (CMA, 1988).

eral and state statutes applicable to a given matter will never be *exactly* identical. They need, under *Cooper*, only be substantially comparable. In the instant case, the statutes clearly were so, and prohibited substantially the same act in vindication of substantially the same interests. Accordingly, under *Cooper*, the state prosecution should be found to be both unwarranted and impermissible.

I would, therefore, affirm the decision of the Court of Appeals.

BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.